**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

NANCY SALSCHNEIDER,

    Plaintiff,

v.

**MEMORANDUM OF LAW AND ORDER**
Case No. 0:05-cv-00235 (MJD/SRN)

KOHL'S DEPARTMENT STORE,

    Defendant and
    Third-Party Plaintiff,

v.

WOODBURY VILLAGE SHOPPING
CENTER LIMITED PARTNERSHIP,

    Third-Party Defendant,

and

WOODBURY VILLAGE SHOPPING
CENTER CORPORATION,

    Third-Party Defendant.

Paul F. McEllistrem, Hauer, Fargione, Love, Landy & McEllistrem, Counsel for Nancy Salschneider.

John F. Angell and Louise A. Behrendt, Stich Angell Kreidler & Dodge P.A., and Patrick W. Ostergren, Hansen Dordell Bradt Odlaug & Bradt, P.L.L.P., Counsel for Kohl's.

John F. Angell, Louise A. Behrendt and Michael S. Kreidler, Stich Angell Kreidler & Dodge P.A., Counsel for Woodbury Village Shopping Center Limited Partnership.

John F. Angell and Louise A. Behrendt, Stich Angell Kreidler & Dodge P.A., Counsel for Woodbury Village Shopping Center Corporation.

---

## I. INTRODUCTION

This is a negligence lawsuit involving injuries sustained after Plaintiff fell in a parking lot.  This matter is before the Court on Defendant Kohl's Department Store's ("Kohl's") and Third-Party Defendants', Woodbury Village Shopping Center Limited Partnership and Woodbury Village Shopping Center Corporation ("Woodbury Village"), Motion for Summary Judgment [Docket No. 23].  Oral arguments were held on July 12, 2006.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Nancy Salschneider, a Minnesota citizen, fractured her right foot and sustained rotator cuff injuries to her left shoulder on September 3, 2003 when she fell in a pothole in the parking lot in front of Kohl's in Woodbury, Minnesota.  Defendant Kohl's is a Wisconsin corporation.  After Kohl's remanded the case to federal court, it joined Woodbury Village as third-party defendants seeking contribution and indemnity.

### B.     The Circumstances at the Time of Injury

It is uncontested that the pothole was eight to twelve inches deep and about the circumference of an automobile tire. Photographs illustrate the location of the pothole and its characteristics at the time of the injury. The pothole was adjacent to the driver's side of Salschneider's car, positioned between the driver's door and the front end of her car. The pothole was near a light pole with a large circular cement base. The light pole was adjacent to the driver's side of Salschneider's car, positioned ahead of the front end of her car. There were cars parked in the four parking spots directly in front of Salschneider's car, to the side and next to her car.

Kohl's acknowledges that the pothole existed when Salschneider fell. There were no markings, barriers, cones, or warnings posted at or near the pothole. It was a clear, sunny day.

### C.     The Incident

On September 3, 2003 sometime between 4:00 and 6:00 P.M., Salschneider pulled into a parking space in the parking lot of the Kohl's Department Store in Woodbury. She exited her car from the driver's seat, closed the door and turned toward the back of the car, which was in the opposite direction of the pothole. She carefully exited the car because she has two artificial hips. She retrieved items from her backseat and walked towards the back end of her car and around the two cars parked next to her in order to walk towards the store. Salschneider

did not pass the pothole on her way into Kohl's, and does not recall seeing the pothole at any time before she fell.

After about twenty minutes in the store, she exited and took a different route back to her car. She approached her vehicle from the front driver's side, by walking between two cars in the row ahead of her own car. Salschneider walked around the cement base of the light pole and fell in the pothole. She immediately felt pain in her right foot and left shoulder.

Salschneider testified that before she fell she did not notice any potholes in the parking lot even though she generally notices more things than most people because of her two artificial hips. She could not think of anything that would have prevented her from seeing and avoiding the pothole and could not recall being distracted by anything before she fell.

Salschneider went to work after she fell but felt faint and nauseated throughout the evening. The next day she went to a doctor who told her she had a broken foot. She then bought a disposable camera and took pictures of the pothole and talked to the store manager at Kohl's. She attempted to take pictures of the pothole a second time, but it had been filled. Two weeks after the fall she saw a doctor about her shoulder which ultimately required surgery to repair it.

## III.   DISCUSSION

### A.   Summary Judgment and Burden of Proof

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The moving party is entitled to summary judgment if when viewing the evidence in the light most favorable to the nonmoving party, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Ritter v. M.A. Mortenson Co., 352 N.W.2d 110, 112 (Minn. Ct. App. 1984).  While the moving party does not have to negate the opponent's claim in order to be granted summary judgment, they must initially demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Additionally, Rule 56(e) of the Federal Rules of Civil Procedure requires the nonmoving party to go beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Rosvall v. Provost, 155 N.W.2d 900, 904 (Minn. 1968).  A motion for summary judgment should be denied if reasonable persons "might draw different conclusions from the evidence presented."  DLH, Inc. v. Russ, 566 N.W.2d 60, 69 (Minn. 1997).

Since this is a diversity case, the substantive law of Minnesota, the forum state, applies. Retail Assocs., Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th Cir. 2001).

### B.     Negligent Failure to Warn

A prima facie case of negligence requires a plaintiff to show four elements: 1) a duty owed by the defendant, 2) a breach of that duty, 3) causation, and 4) injury. Rinn v. Minn. State Agric. Soc'y, 611 N.W.2d 361, 364 (Minn. Ct. App. 2000). While all four elements must be addressed at trial, Kohl's and Woodbury Village seek summary judgment based solely on the first element: duty to Salschneider.

#### 1.     Whether a Duty Existed

The extent of the land possessor's duty "to inspect, repair, or warn those who come upon the land as licensees or invitees will be decided by the test of reasonable care." Peterson v. Balach, 199 N.W.2d 639, 647 (Minn. 1972). Also, people "entering upon the land will be held to the same standard of care, that of a reasonable man under the circumstances then existing." Id.; Engelson v. Little Falls Area Chamber of Commerce, 362 F.3d 525, 530 (8th Cir. 2004) (stating, "The land possessor's legal duty starts where the invitee's responsibility to care for self ends."). Whether a defendant owes a plaintiff a legal duty of care is a matter of law to be determined by the court. Larson v. Larson, 373 N.W.2d 287, 289 (Minn. 1985).

6

Generally, land possessors have a duty to guard business invitees against dangers that are reasonably anticipated. Sperr v. Ramsey County, 429 N.W.2d 315, 318 (Minn. Ct. App. 1988); see also Bisher v. Homart Dev. Co., 328 N.W.2d 731, 733 (Minn. 1983). However, a landowner generally has no duty warn an invitee "of a physical harm if the danger on the land is known or obvious, unless the landowner should anticipate the harm despite its obvious character." Wojciehowski v. Labovitz, No. A04-2228, 2005 WL 1272745, at *2 (Minn. Ct. App. May 31, 2005) (unpublished).

### a. "Open and Obvious" Exception

Kohl's and Woodbury Village argue that they owed no duty to Salschneider because the pothole was "open and obvious" such that a reasonable person in the same circumstance would have seen and been able to avoid it.

The Minnesota Supreme Court adopted the Restatement (Second) of Torts § 343A(1), which declares, "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Peterson v. W.T. Rawleigh Co., 144 N.W.2d 555, 557 (Minn. 1966) (emphasis added).

A dangerous condition is "known" if there is knowledge of the existence of the condition along with an appreciation of the danger it involves. Restatement (Second) of Torts § 343A(1), cmt. b. A dangerous condition is "obvious" when

7

"both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Id. The test for determining whether a condition is open and obvious is whether the condition was in fact visible, considering the circumstances at the time of the injury, not whether the particular plaintiff actually saw it. Bundy v. Holmquist, 669 N.W.2d 627, 633 (Minn. Ct. App. 2003); see also Betzold v. Sherwin, 404 N.W.2d 286, 289 (Minn. Ct. App. 1987) (holding, "[a] landowner is not relieved of the duty to warn at night merely because a condition is open and obvious during the day.").

In Minnesota, courts consider the characteristics of the condition to determine whether a dangerous condition is "open and obvious." For example, in Sperr v. Ramsey County, the court held that the defendant did not owe a 10-year-old boy a duty when he was injured after running into a low-hanging tree branch that was in plain view. 429 N.W.2d at 315-17. The branch was in plain view because there were no other trees nearby and it contrasted with the background. Id. at 317-18. Also, the plaintiff admitted to seeing the tree itself, just not the specific branch. Id.

Similarly, in Lawrence v. Hollerich, the court held there was no duty to a plaintiff who was injured after falling down a hill because the steepness of the hill was "so obvious that no warning from [defendants] was warranted." 394 N.W.2d 853, 855-57 (Minn. Ct. App. 1986); see also Bisher, 328 N.W.2d at 732-34

8

(holding no duty where plaintiff fell over a planter that contrasted from the colors around it and was located where plaintiff did not have to walk).

On the other hand, in Krengel v. Midwest Automatic Photo, Inc., the court upheld a jury verdict finding the defendants 70% liable for plaintiff's injury when plaintiff tripped over a 1 ¼ inch riser while placing her child in a photo booth because there were no contrasting colors or warning signs posted indicating a change in elevation.  203 N.W.2d 841, 844 (Minn. 1973).  The Minnesota Supreme Court has ruled that, "absent other factors, such as poor illumination or noncontrasting colors, ordinary changes in elevation do not excuse the failure to see what is in plain sight."  Johnson v. R.E. Tapley, Inc., 136 N.W.2d 538, 541-42 (Minn. 1965) (holding no duty to plaintiff where plaintiff tripped over a red-painted elevated slab that contrasted sharply with the color of the public sidewalk).

The Court finds that the pothole was not "open and obvious," as a matter of law, under the specific circumstances.  Similarly to Betzold, which held that a landowner is not relieved of their duty to warn of a dangerous condition at night just because it is "open and obvious" during the day, Kohl's is not relieved of its duty of care simply because the pothole is "open and obvious" when it is not surrounded by parked cars.

Looking at the photographs of the pothole, there is no clear contrast from the surrounding pavement.  (See Rorvig Aff. Ex. B.)  Furthermore, although

9

Salschneider claims she was not distracted and there was nothing that prevented her from seeing the pothole, the photographs demonstrate that her car door probably blocked her view of the pothole before walking towards the store, and the cement base of the light pole obstructed her view of the pothole until she stepped around it.  Therefore, a reasonably prudent person in the same circumstances would not have seen the pothole until it was too late to react.  Thus, construing the facts in the light most favorable to Salschneider, the Court determines that the danger of harm was not known or obvious so as to relieve Defendants of their duty to guard invitees against dangers that are reasonably anticipated.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 23] is **DENIED**.

Dated: July 17, 2006              s / Michael J. Davis
                                  Judge Michael J. Davis
                                  United States District Court